In re Charles F. DAY, Jr., Bankrupt.

Carl MURRAY d/b/a C & C Plumbing Co. and Reliance Insurance Company, Plaintiffs,

v.

Charles F. DAY, Jr., a/k/a Chuck Miller, Defendant.

Civ. No. C–1–79–554.
Bankruptcy No. B–1–78–1004.

United States District Court, S. D. Ohio, W. D.

Feb. 5, 1980; March 14, 1980 and May 28, 1980.

Albert T. Brown, John D. Erhardt, Cincinnati, Ohio, for plaintiffs.

Allen Brown, Dennis M. O'Connell, Cincinnati, Ohio, for defendant.

## OPINION

DAVID S. PORTER, Senior District Judge:

■ This matter is on appeal from an order of the bankruptcy court finding that a debt owed by defendant-appellee Charles F. Day, Jr. ("Day") to plaintiff-appellants Carl Murray and Reliable Insurance Company (collectively referred to as "Murray") is dischargeable under Section 17 of the Bankruptcy Act, 11 U.S.C. § 35.[1]

---

1. In 1978, Congress repealed the Bankruptcy Act, effective October 1, 1979. *See* Bankruptcy Reform Act of 1978, Pub.L. 95–598, § 401(a), 92 Stat. 2682. A case commenced under the

## I. *Facts*

The debt arose out of a default judgment in the amount of $12,488.08 against Day that was obtained by Murray from the Court of Common Pleas for Clermont County, Ohio: *Carl Murray v. Charles Day*, No. 76-CV 0578 (September 28, 1976) (a copy is attached to doc. 4). In its default judgment entry the common pleas court found that Day had stolen and converted to his own use a bulldozer owned by Murray and that his conduct in doing so was "wanton, willful, malicious, and intentional." *Id.* The particulars of the bulldozer abduction are not in dispute and are briefly summarized in the bankruptcy court's order (doc. 10, p. 2):

> On May 26, 1975 [Day] was doing some construction work at the residence of his mother in Clermont County at # 12 Fleetwood Avenue. Accidently, the "bulldozer front loader" he was using became embedded in the creekbed at the rear of the premises. The weather was ominous and Day panicky. He was in need of something to salvage the loader. He tried to get help through a friend at a construction site. No luck. He spotted the bulldozer owned by Murray, tried to call the number appearing on the machine, and no luck. In desperation he converted the bulldozer owned by [Murray] by driving it down to where his was incapacitated. . . .

> The Murray bulldozer used to salvage the front loader, also became embedded in the creek. A wrecking company finally pulled it out.

Some time after Murray obtained the default judgment, Day filed a petition with the bankruptcy court for discharge of his debts. In September, 1978, while Day's bankruptcy petition was pending, Murray filed a complaint (doc. 1) with the bankruptcy court asking for a declaration that the debt created by the default judgment is "nondischargeable" under Section 17a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2). That section states in pertinent part:

(a) a discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except . . . (2) . . . liabilities . . . for willful and malicious conversion of the property of another. . . .

Day's answer (doc. 4) denied that the debt was nondischargeable. Murray moved for summary judgment (doc. 6), contending the default judgment found Day had willfully and maliciously converted Murray's bulldozer and the doctrine of collateral estoppel prevented the bankruptcy court from independently determining the willfulness and maliciousness issues. The summary judgment motion was unopposed, yet the bankruptcy court denied it (doc. 7). The matter proceeded to trial (transcript is doc. 8). The bankruptcy court found that Day willfully converted Murray's bulldozer, but did not do so maliciously (doc. 10, p. 3). The debt was declared dischargeable (*Id.*). This appeal followed pursuant to Bankruptcy Rule 801 and S.D.Ohio R. B-6.

## II. *Standard of Review*

■ In an appeal such as this the bankruptcy court's findings of fact must be accepted by the district court unless they are clearly erroneous. Bankruptcy Rule 810. The district court is, however, free to reach its own conclusions of law, and to draw inferences or deductions different from those of the bankruptcy court on documentary, undisputed, and stipulated evidence. *Stafos v. Jarvin*, 477 F.2d 369, 372 (10th Cir. 1973), *cert. denied*, 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973); *In re Clemens*, 472 F.2d 939, 943 n. 5 (6th Cir. 1972); 13 Collier on Bankruptcy § 810.05, p. 8-79 (14th Ed. 1978).

## III. *Issues on Appeal*

On appeal Murray alleges the bankruptcy court committed three errors: (a) denying Murray's unopposed summary judgment motion, (b) concluding Day's conversion of Murray's bulldozer was not malicious, and (c) adopting language in Day's answer as a finding of fact.

Bankruptcy Act, such as this one, continues to be governed by it. Discharge provisions substantially similar to § 17 of the Bankruptcy Act

appear in § 523 of the new law. 92 Stat. 2590; 11 U.S.C. § 523.

Each of these alleged errors will be discussed separately.

### A. *Denial of Summary Judgment*

Murray forwards two arguments for finding the bankruptcy court's denial of his summary judgment motion in error. The first is that the motion was unopposed and therefore should have been granted as a matter of course. The second is that the default judgment determined the issues of willfulness and maliciousness in Murray's favor and the doctrine of collateral estoppel prevents the relitigation of those issues in bankruptcy court.

This Court cannot agree with either of these arguments.

Murray's summary judgment motion (doc. 6), made pursuant to Bankruptcy Rule 756, was supported by documents whose genuineness was established by Bankruptcy Rule 736 (doc. 5). These documents included the default judgment entry. Day supplied no responsive memoranda or evidentiary material.

Bankruptcy Rule 756 adopts Fed.R.Civ.P. 56, which states in pertinent part:

(e) . . . When a motion for summary judgment is made and supported as provided in this rule, one adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue of fact for trial. If he does not respond, summary judgment, *if appropriate,* shall be entered against him. (Emphasis added.)

■ The words "if appropriate" in Rule 56(e) indicate that a court cannot automatically grant a movant's summary judgment motion when the opposing party fails to comply with the requirement of the rule. It is incumbent upon the Court to review the materials submitted in support of the motion to determine if they establish the absence of a genuine issue of fact, even if no opposing evidentiary matter is presented. "Advisory Committee Note to the 1963 Amendments to Rule 56," 31 F.R.D. 647, 648

(1963). If that review indicates a triable issue of material fact, then summary judgment should be denied. *Anderson v. Schulman,* 337 F.Supp. 177 (N.D.Ill.1971); see Wright & Miller, Federal Practice and Procedure: Civil § 2739 (1973).

■ The bankruptcy court's denial of Murray's summary judgment motion was not erroneous. As discussed below, it is incumbent upon the bankruptcy court to determine matters of dischargeability under the Bankruptcy Act. The questions of willfulness and maliciousness must be decided on the basis of facts found at trial by the bankruptcy court. Granting Murray's motion for summary judgment on the issue of dischargeability simply because Day did not respond to it would have been inappropriate.

Murray's second argument for finding the denial of his summary judgment motion in error is that the default judgment held Day had acted willfully and maliciously in converting Murray's bulldozer and therefore the Bankruptcy Act's prerequisites for nondischargeability had been fulfilled. Murray asserts the doctrine of collateral estoppel precludes determination of the issues of willfulness and maliciousness by the bankruptcy court.

This argument is effectively undercut by the Supreme Court's recent decision in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *Brown* involved an appeal of a bankruptcy court's finding that a debt had been discharged. The debt was created by a state court judgment pursuant to a stipulated settlement. The stipulation creating the debt did not state the basis of the debtor's liability. When the debtor later petitioned for bankruptcy, the judgment creditor alleged that debt was the product of the debtor's fraud, deceit and malicious conversion and therefore was nondischargeable under Sections 17a(2) and 17a(4) of the Bankruptcy Act, 11 U.S.C. §§ 35(a)(2), (4). The debtor successfully argued that the doctrine of *res judicata* prevented litigation of grounds that could have been the basis of the state court's judgment and, therefore,

the creditor cannot assert matters that were not part of that judgment. *Id.*, 442 U.S. at 129–130, 99 S.Ct. at 2208–09.

In reversing the bankruptcy court's finding, which had been affirmed by the Colorado district court and the Tenth Circuit, the Supreme Court held the bankruptcy court was not confined to a review of the judgment and record in the prior state court proceeding when determining the dischargeability of the debt. The court found that the 1970 amendments to Section 17 of the Bankruptcy Act[2] committed Section 17 issues to the exclusive jurisdiction of the bankruptcy court. Dischargeability was a federal question, the court explained, and considerations material to discharge are irrelevant to the ordinary state court collection proceeding. To apply *res judicata*, the court said, "would force an otherwise unwilling party to try § 17 questions to the hilt in order to protect himself against the mere possibility that a debtor might take bankruptcy in the future." *Id.*, 442 U.S. at 135, 99 S.Ct. at 2211. *Cf. Ryan v. Ohio Edison Co.*, 611 F.2d 1170 at 1176 n. 6 (6th Cir. 1979).

The error alleged by Murray in this appeal differs from that alleged in *Brown* in that Murray asserts the doctrine of collateral estoppel prevents the bankruptcy court from determining matters dealt with in the state court judgment. The error alleged in *Brown* was the bankruptcy court's application of the doctrine of *res judicata*. This distinction is important in light of the last footnote in *Brown* :

> This case concerns *res judicata* only, and not the narrower principle of collateral estoppel. Whereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. *Montana v. United States*, 440 U.S. 147, 153 [, 99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 [, 99 S.Ct. 645, 649 n. 5, 59 L.Ed.2d 645] (1979); *Cromwell v. County of Sac*, 94 U.S. 351,

352–353 [, 24 L.Ed. 195] (1876). If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

> Because respondent does not contend that the state litigation actually and necessarily decided fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral estoppel effect to a prior state judgment. In another context the Court has held that a bankruptcy court should give collateral estoppel effect to a prior decision. *Heiser v. Woodruff*, 327 U.S. 726, 736 [, 66 S.Ct. 853, 857, 90 L.Ed. 970] (1946). The 1970 amendments to the Bankruptcy Act, however, have been interpreted by some commentators to permit a contrary result. See 1A Collier on Bankruptcy § 17.16[6], at 1650.2 (14th ed. 1978); Countryman, The New Dischargeability Law, 45 Am. Bankr.L.J. 1, 49–50 (1971). But see 1D. Cowans, Bankruptcy Law & Practice § 253 (1978).

442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10.

■ The opinion of this Court is that the 1970 amendments to the Bankruptcy Act foreclosed the collateral estoppel effect of state court judgments on bankruptcy courts. There is no reason to treat the doctrine of collateral estoppel different from the doctrine of *res judicata* in the bankruptcy dischargeability context. The policy reasons supporting collateral estoppel are essentially the same as those underlying *res judicata*. Note, "Developments in the Law—Res Judicata," 65 Harv.L.Rev. 818, 840 n. 161 (1952). Both doctrines encourage reliance on judicial decisions, bar vexatious litigation, and free courts to resolve other disputes. *Montana v. United States, supra*, 440 U.S. at 153–54, 99 S.Ct. at 973; *Parklane Hosiery Co. v. Shore, supra*, 439 U.S. at 326, 99 S.Ct. at 649; F. James, Jr. & G.

**2.** Pub.L.No.91–467, §§ 5–7, 84 Stat. 992 (October 19, 1970).

Hazard, Jr., Civil Procedure § 11.2 (2d Ed. 1977); see Cleary, "Res Judicata Re-examined," 57 Yale L.J. 339, 344 (1948). If Congress intended, as the Supreme Court found in *Brown,* to make an exception to the application of *res judicata* in bankruptcy dischargeability cases,[3] there is reason to think an exception to the application of collateral estoppel was intended as well. The legislative history of the 1970 Bankruptcy Act amendments quoted in *Brown* as support for the conclusion that *res judicata* did not apply to bankruptcy dischargeability matters applies with equal force as to collateral estoppel. *See Brown v. Felsen, supra,* 442 U.S. at 136, 99 S.Ct. at 2212. For collateral estoppel as well as *res judicata,* "it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy . . . which takes . . . § 17 questions away from bankruptcy courts and forces them back into state courts." *Id.* The three court of appeals decisions cited in *Brown* as support for the finding that the 1970 amendments preclude application of *res judicata* expressly state that the 1970 amendments preclude application of collateral estoppel as well. *See In re McMillian,* 579 F.2d 289, 293 (3d Cir. 1978); *In re Houtman,* 568 F.2d 651, 653 (9th Cir. 1978); *In re Pigge,* 539 F.2d 369, 373 (4th Cir. 1976); *see also* 1A Collier on Bankruptcy ¶ 17.16 at 1650.2 (14th Ed.

1978). Reason and authority then dictate that bankruptcy courts not give collateral estoppel effect to state court findings on issues going to nondischargeability of debts under Section 17a of the Bankruptcy Act. *See In re Stevens,* 476 F.Supp. 147, 149 (D.N.J.1979); *but see In re Ross,* 602 F.2d 604, 607–08 (3d Cir. 1979).[4]

In sum, this Court finds that the issues of willfulness and maliciousness of Day's actions under Section 17a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), were within the exclusive jurisdiction of the bankruptcy court, and that court was not bound by the findings of the common pleas court on those issues. The bankruptcy court did not err in denying Murray's summary judgment motion because the issues of willfulness and maliciousness were not conclusively determined by the default judgment.

### B. *Finding of No Maliciousness*

Murray's second allegation of error is the bankruptcy court's conclusion that Day did not act maliciously in converting Murray's bulldozer. This Court agrees with Murray's allegations and concludes that Day's conversion of Murray's bulldozer was both willful and malicious.

■ At the outset, it should be noted that a conclusion that certain acts are "will-

3. The exception apparently goes to 28 U.S.C. § 1738 which requires federal courts to give state court judgments the same full faith and credit they have in the state of origin. *See In re McMillian,* 579 F.2d 289, 294 (3d Cir. 1978), J. Gibbons concurring.

4. Even if state court judgments were given collateral estoppel effect in bankruptcy courts, the common pleas court judgment at issue in this case would not be deserving of such effect. The rule of collateral estoppel is that where an issue of fact or law necessary to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties. Restatement (Second) of Judgments § 68 (Tent. Draft No. 1, 1973); 1B Moore's Federal Practice ¶ 0.443[2] (1979). The judgment in this case was a default judgment and the general rule is that issues decided by default judgment are not "actually litigated" and therefore are not conclusively determined. F. James, Jr. & G. Hazard, Jr., Civil Procedure § 11.17 (2d Ed. 1977); 1B Moore's Federal Practice ¶ 0.444[2]; Restate-

ment (Second) of Judgments § 68 comment e, p. 153 (Tent. Draft No. 1, 1973); Note, "Developments in the Law—Res Judicata," 65 Harv.L. Rev. 818, 840 (1952); *but see Overseas Motors, Inc. v. Import Motors, Inc.,* 375 F.Supp. 449 (E.D.Mich.1974), *aff'd* 519 F.2d 119 (6th Cir. 1975). We are also not impressed that the findings in the judgment that Day's actions were "willful" and "malicious" were necessary in order to conclude he had converted Murray's bulldozer. *See* 11 O.Jur.2d, Conversion § 13 (1955).

We also note that the use of collateral estoppel in this case would be an "offensive use" in that the plaintiff, Murray, seeks to foreclose the defendant, Day, from litigating an issue previously determined against the defendant. The Supreme Court has stated that it is preferable to give federal trial courts discretion in applying collateral estoppel offensively. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330–31, 99 S.Ct. 645, 651, 59 L.Ed.2d 645 (1979).

ful" or "malicious" under Section 17a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), is a conclusion of law in that it relates a statutory term to actual events. *In re Sussman*, C–1–79–129, B–1–78–832 (S.D. Ohio, J. Rubin, June 7, 1979); *In re Hickman*, 410 F.Supp. 528 (W.D.Mo.1976); *see NLRB v. Marcus Trucking Co.*, 286 F.2d 583, 590–91 (2d Cir., J. Friendly, 1961). As noted above, a district court reviewing a bankruptcy court decision is not bound by the "clearly erroneous" rule as to conclusions of law. Hence, in this appeal this Court is free to determine anew whether the actions of Day were "willful and malicious" as those terms are used in Section 17a(2) of the Bankruptcy Act.

The meaning of "willful and malicious" under Section 17a(2) has been the subject of numerous state and federal court decisions. *See* cases cited in 1A Collier on Bankruptcy ¶ 17.17 footnotes 4–10. The most quoted definition is that in *Tinker v. Colwell*, 193 U.S. 473, 487, 24 S.Ct. 505, 509, 48 L.Ed. 754 (1904):

> A wilful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done wilfully and maliciously, so as to come within the exception.

The Supreme Court has warned, however, that a willful and malicious injury does not follow as of course from every act of conversion. . . .

> There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice.

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934), "Malice" as commonly conceived, that is personal hatred, spite, or ill will, is not part of the legal definition that has evolved under Section 17a(2). *Tinker v. Colwell, supra*, 193 U.S. at 485–86, 24 S.Ct. at 508; *In re Vickers*, 546 F.2d 1149, 1150 (5th Cir. 1977). For purposes of this appeal the best standard for determining if the actions of Day were "willful and malicious"

is that provided in 1A Collier on Bankruptcy ¶ 17.17 at 1653–54 (1978):

> the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception.

*See In re Elliott*, 385 F.Supp. 1194, 1197 (M.D.La.1974); *In re Drowne*, 124 F.Supp. 842, 843 (D.R.I.1954); *Nunn v. Drieberg*, 235 Mich. 383, 386, 209 N.W. 89, 90 (1926); *Weeks v. Streicher*, 74 Ohio App. 253, 256, 58 N.E.2d 415, 416 (1943).

 That Day committed an act of conversion is not disputed. His taking of Murray's bulldozer was certainly a distinct act of dominion wrongfully exercised over another's personal property in denial of his right or inconsistent therewith. 18 Am. Jur.2d, Conversion § 1 (1965); 11 O.Jur.2d, Conversion § 13 (1955). It is also not disputed that Day took the bulldozer without Murray's knowledge or consent. The findings of fact of the bankruptcy court show that Day's taking of the bulldozer was intentional, not accidental or inadvertent. Murray certainly sustained injury as a result of Day's action. The record discloses a bill of $9,695.19 for repairs to Murray's bulldozer after it was pulled from the creekbed (doc. 9, pltf's exh. 9). The only issue presented by the circumstances of this case is whether there was justification or excuse for Day's actions. The bankruptcy court found that Day was in "an emergency situation" and had an "instantaneous critical need" to use Murray's bulldozer (doc. 10, p. 3). This situation and need, the bankruptcy court concluded, provided justification and excuse for Day's actions. This Court cannot agree. The only justifications recognized under Section 17a(2) are those in the nature of mistake or misapprehension, that is those that show lack of conscious intent on the part of the converter. *Davis v. Aetna Acceptance Co., supra*, 293 U.S. at 332, 55 S.Ct. at 153; *Rees v. Jensen*, 170 F.2d 348, 351 (9th Cir. 1948); 1A Collier on Bankruptcy ¶ 17.09 at 1600–01 (1978). The facts found by the bankruptcy court in this

case clearly show that Day consciously intended to convert Murray's bulldozer to his own use. His actions were without justification or excuse recognized under Section 17a(2).

At oral argument Day's counsel contended that the "doctrine of necessity" provides justification for Day's actions. We find this contention unavailing. The doctrine of necessity was developed in the criminal law as an excuse for a criminal act. It has no place in a civil context. Even if the doctrine was available it would not provide justification or excuse for Day's actions. The necessity which will excuse a harmful act must be clear and conclusive and must arise without negligence or fault. *See* 21 Am.Jur.2d, Criminal Law § 99 (1965). The facts of this case show that Day's need for Murray's bulldozer arose out of Day's carelessness in embedding his own bulldozer in the creekbed.

In sum, this Court concludes as a matter of law that Day willfully and maliciously converted Murray's bulldozer such that the debt created by that conversion comes within the exception to dischargeability created by Section 17a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2). The situation and need of Day provided no justification or excuse for his actions.

### C. *Adopting Allegation in Answer as Fact*

Murray's third allegation of error is the bankruptcy court's adoption of an allegation in Day's answer as a finding of fact. The allegation was to the effect that Day was arrested, tried, and acquitted of a criminal charge of theft for taking Murray's bulldozer.

A reading of the bankruptcy court's order discloses that this "finding" was made to buttress the conclusion that Day had not acted maliciously. Since this Court has found the bankruptcy court's conclusion incorrect, a ruling on the propriety of this finding of fact is unnecessary.

### IV. *Conclusion*

For the foregoing reasons, this Court concludes that Charles F. Day, Jr., willfully and maliciously converted Carl Murray's bulldozer such that the debt created by that conversion comes within the exception to discharge created by Section 17a(2) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2).

We hold, therefore, the determination of the bankruptcy court is erroneous as a matter of law; its order is hereby REVERSED and this matter is REMANDED for entry of an order finding that the debt of Charles F. Day, Jr. to Carl Murray and Reliable Insurance Company is not discharged.

### ORDER ON "MOTION FOR RECONSIDERATION"

Defendant-Appellee Charles F. Day, Jr. has filed a "motion for reconsideration" (doc. 1–8), asking this Court to reverse its order of February 5, 1980 (doc. 1–6). The Federal Rules of Civil Procedure do not contemplate motions to "reconsider." We will however treat it as a motion to alter or amend a judgment pursuant to Fed.R.Civ.P. 59(e). *Smith v. Hudson*, 600 F.2d 60, 62–63 (6th Cir. 1979).

A Rule 59(e) motion must be filed "not later than 10 days after entry of the judgment." Judgment pursuant to our order in this case was filed February 6, 1980 (doc. 1–7). Defendant-Appellee's motion was filed February 20, 1980—14 days later.

We find the motion is not timely, *see* Fed.R.Civ.P. 6(a), and it is therefore DENIED.

### ORDER ON MOTION TO EXTEND TIME FOR APPEAL

In this bankruptcy appeal this Court entered an order on February 5, 1980 reversing the order of the Bankruptcy Court and requiring that judgment be entered in favor of plaintiffs-appellants (doc. 1–6). On February 6, 1980 the Clerk of Court entered the judgment (doc. 1–7). On February 20, 1980 defendant-appellee filed a "motion for reconsideration" (doc. 1–8). This Court entered an order on March 14, 1980 which

construed defendant-appellee's motion as one pursuant to Fed.R.Civ.P. 59(e) and denied the motion because it was not filed within 10 days of the entry of judgment as required by Rule 59(e) (doc. 1–10).

On April 8, 1980 defendant-appellee filed a notice of appeal (doc. 1–11) and a motion to this Court to extend the time for appeal until April 8, 1980 (doc. 1–12). The motion is made pursuant to Fed.R.App.P. 4(a)(5) and states that an extension is necessitated by excusable neglect.

 Fed.R.App.P. 4(a)(1) requires that a notice of appeal be filed with the Clerk of the District Court within 30 days after the date of the entry of the judgment appealed from. In this case defendant-appellee's notice of appeal should have been filed by March 7, 1980. The 30-day requirement is suspended if a timely motion under Fed.R.Civ.P. 59 is filed with the District Court. Fed.R.App.P. 4(a)(4). Such a suspension did not take place in this case because defendant-appellee's Rule 59(e) motion was not timely.

Fed.R.App.P. 4(a)(5) allows a District Court to extend the time for filing a notice of appeal "not later than 30 days after the expiration of the time prescribed by this Rule 4(a)" upon a showing of excusable neglect or good cause. The Advisory Committee's Note of 1979, reprinted in *Moore's Federal Practice 1980 Rules Pamphlet*, instructs that a motion to extend the time must be filed no later than 30 days after the expiration of the original time period. As noted above, the original time period in this case expired March 7, 1980. Hence the motion to extend should have been received by April 7, 1980.[1] Defendant-appellee's motion was filed April 8, 1980—one day late. Fed.R.App.P. 26(b) prohibits enlarging the time allowed for filing a notice of appeal. *See* Fed.R.App.P. 2. Thus, even if we found good cause or excusable neglect, we are powerless to allow the appeal.

Defendant-appellee's motion is denied.

So ordered.

1. The actual 30-day period ended April 6, 1980. But, since April 6 was a Sunday, the period

would have been extended to April 7, 1980. Fed.R.App.P. 26(a).