**In the Matter of Cynthia June SNEED, Debtor.**

**CUMIS INSURANCE SOCIETY, INC., Plaintiff,**

**v.**

**Cynthia June SNEED, Defendant.**

**Bankruptcy No. 3–81–00017.
Adv. No. 381–0174.**

United States Bankruptcy Court, S. D. Ohio, W. D.

July 28, 1981.

Gregory P. Dunsky, Dayton, Ohio, for plaintiff.

Russell L. Carter, Dayton, Ohio, for defendant-debtor.

Herbert Ernst, Jr., Dayton, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FACTS

Plaintiff obtained a judgment on 16 December 1980 against Defendant-Debtor in the Common Pleas Court of Montgomery County in the amount of $10,905.31 plus interest ($46.80) and costs ($83.00), based upon a general verdict "upon the issued [sic] joined between the parties in this case . . . ." and without specific findings of fact.

On 6 January 1981 Debtor filed a voluntary bankruptcy petition and obtained an order for relief.

Plaintiff filed its complaint on 16 March 1981 seeking a determination of non-dischargeability and judgment in the amount of $11,036.11, based upon allegations of obtaining money by false pretenses, false representation and actual fraud, as defined in Title 11, U.S.C. § 523(a)(2)(A).

A pretrial order was entered herein on 24 April 1981 wherein the parties agreed that this Court would review the record of the state court and "make a preliminary determination as to whether or not the record accurately reflects that the judgment obtained against the defendant-debtor is a debt for obtaining money by false pretenses, false representation and actual fraud. This determination on the part of the Judge should eliminate a need for a trial in this case."

On 16 June 1981 Plaintiff filed a motion for summary judgment on the ground that there is no genuine issue as to any material fact.

The complaint in the state court in paragraphs 9 through 32 alleges that the Defendant as an employee of NCR Employees' Credit Union and as a "loan processor" on twenty-one different occasions "fraudulently withdrew" amounts varying from $500 to $1000 each from different accounts by forging the names of several individuals and with knowledge such withdrawals were without authorization. Plaintiff paid NCR Employees' Credit Union and sued as subrogee, as insurance carrier bonding the employees.

By affidavit attached to the motion for summary judgment by Gregory P. Dunsky, attorney for Plaintiff, it is represented that at the state court trial it was stipulated 21 cash withdrawals were made from 17 various accounts, totalling $15,800, and that none of these withdrawals were made by the actual shareholders and depositors of these accounts nor any person who was authorized to make such withdrawals. The affidavit further represents that three witnesses who were tellers testified at the trial they remembered making 5 cash withdrawals to the defendant in amounts ranging from $600 to $1000 each on four different occasions corresponding to the allegations of the complaint. All 5 of these cash withdrawal slips were from accounts other than Cynthia June Sneed's account and did not bear her signature. The affidavit further represents that of the 21 withdrawal slips, an expert examiner of questioned documents testified 17 were definitely written by the Defendant and the other 4 were most probably written by her. It is further represented that four witnesses testified at the trial that Defendant was caught in the teller's line on January 4, 1980, with 4 other withdrawal slips for other people's accounts in her hand.

### DECISION

Plaintiff by memorandum accompanying the motion for summary judgment urges that by the doctrine of collateral estoppel the state court judgment establishes the necessary fraud to establish the debt is not dischargeable, distinguishing the case of *Charles F. Day, Jr., aka Chuck Miller, 4 BR. 750 (D.C.S.C.Ohio, 1980)* on the basis that case involved a default judgment rather than a case, such as at bar, actually tried in the state court.

Defendant counters the motion, urging essentially that, "In the State Trial Court there was no finding of fraud or misrepresentation. There was no separate finding of fact or law. There was no special verdict finding fraud or misrepresentation.... All the State Trial Court determined was that the defendant had used for her own purposes moneys acquired on her job and the verdict there simply decided that she should pay it back as a general debt." Defendant then urges that "It would be up to a jury to determine if what she did amounted to false pretenses, false representation or actual fraud."

This court not only concurs with the teaching of *In Re Day*, but finds no reason to distinguish that case from the *instant* case, even though only a default judgment was there involved.

■ The judgment of the state court is entitled to the full faith and credit conferred by the United States Constitution and by statutory implementation, authenticated records and judicial proceedings shall have full faith and credit in any court of the United States. *U.S.Const. Art. 4, § 1, 28 U.S.C. § 1738.* Once a court record has been judicially noticed, the issue then is whether or not the evidence then before the Bankruptcy Court is sufficient to find a violation of the federal law applicable, (herein 11 U.S.C. § 523(a)(2)(A).

We know from the teaching of the United States Supreme Court that the Congress for valid reasons made it clear that the bankruptcy courts are the proper forum for litigation of issues of dischargeability of certain claims, which was taken "away from state courts that seldom dealt with the federal bankruptcy laws and to give those claims to the bankruptcy court so that it could develop expertise in handling them. By the express terms of the Constitution, bankruptcy law is federal law, U.S.Const., Art. I, § 8, cl. 4, and the Senate Report accompanying the amendment described the bankruptcy court's jurisdiction over these § 17 claims as "exclusive" S.Rep.No. 91–1173, p. 2 (1970). While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these § 17 questions away from bankruptcy courts and forces them back into state courts ... Refusing to apply res judicata here would permit the bankruptcy court to make an accurate determination whether respondent in fact committed the deceit, fraud, and malicious conversion which petitioner alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve. *"That court can weigh all the evidence, and it can also take into account whether or not petitioner's failure to press these allegations at an earlier time betrays a weakness in his case on the merits."* Brown v. Felsen (1979) 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767, 20 C.B.C. 273, 1 C.B.C.2d 34, CCH Bankr.L.Rep. ¶ 67122, 5 BC.D. 226, at pages 230–231. [emphasis added]

■ By so obviating the application of the doctrine of res judicata, the bankruptcy court is not confined only to a review of the judgment and record in the prior state-court proceeding when determining the dischargeability of a claim. In the well-reasoned decision in *In Re Day*, 4 B.R. 750 (1980) 750, 754, the court wisely concluded that, "There is no reason to treat the doctrine of collateral estoppel different from the doctrine of res judicata in the bankruptcy dischargeability context. The policy reasons supporting collateral estoppel are essentially the same as those underlying res judicata. Note, 'Developments in the Law—Res Judicata,' 65 Harv.L.Rev. 818, 840 n. 161 (1952). Both doctrines encourage reliance on judicial decisions, bar vexatious litigation, and free courts to resolve other disputes."

It is interesting to note further, that the Court in *Day*, after refusing to preclude looking to the facts because of res judicata or collateral estoppel then proceeded, as a conclusion of law, to hold that the facts in the record constituted a "conversion" of the property of the plaintiff and as a matter of law denied dischargeability.

Hence, this court is constrained to look at the undisputed facts of record and make a determination whether such facts are sufficient to reach legal conclusions under the federal law applicable. The verdict and judgment of the state court are only a portion of those elements and cannot be deemed conclusive. As a matter of law, those elements alone might not constitute sufficient proof.

Furthermore, the affidavit attached to the motion for summary judgment cannot be employed to in any way amplify the legal basis for the state court verdict and judgment.

The evidence before this court, therefore, is the state court verdict and judgment together with the pleadings before that court. The ultimate issue is whether or not from this evidence a conclusion can be drawn on the legal issues raised by the complaint filed in the bankruptcy court.

From these elements only, it is concluded that the state court suit was not based directly or by implication upon an action on any other type claim than fraud and misappropriation of the property or money of others. The Plaintiff herein is an insurance company and had only one type cause of action to pursue; namely, under a bond covering the fraud and dishonesty of an employee of NCR Employees' Credit Union. That is the only cause of action pleaded, and each separate count is very explicitly based upon funds Defendant "fraudulently withdrew ... by forging the name of ... and knowing that said Defendant was not authorized to said withdrawal." This wording was not only the only cause of action before the jury, but is noted in 24 counts and in the final conclusion of the complaint that the "Defendant has fraudulently and wrongfully converted to her own use $15,-800 from NCR Employees' Credit Union to which amount Plaintiff is subrogated in the amount of $10,905.31 ...."

Even though the state court judgment constitutes neither res judicata nor the similar effect of collateral estoppel, the state court proceedings may well be given evidentiary value in assisting the bankruptcy

court to make a determination on federal law and federal questions. If necessary, the bankruptcy court and the litigants may well look to other evidence.

We note, nevertheless, that the Defendant now does not by affidavit attached to the memorandum opposing the motion for summary judgment, or in any other manner, suggest that there are any material facts at issue. Defendant herself admits she "was an employee of the NCR Credit Union and at worse there was an implication of embezzlement or a failure to carry out a trust in a quasi-fiduciary relationship." Defendant also acknowledges that she "had used for her own purposes moneys acquired on her job and the verdict there simply decided that she should pay it back as a general debt." Such expressions callously ignore the specific causes of action and issues before the state court upon which the verdict was found, namely that "Defendant fraudulently withdrew [on various occasions] by forging the name of [numerous individuals]".

Turning to the federal law, the conclusion from the facts is unavoidable that the same type offense is covered by the Section 523(a)(2)(A) "false pretenses, a false representation, or actual fraud ..." Such is a legal conclusion based upon the evidence. A Trial de novo in the bankruptcy court is unnecessary and would be an insult to the judicial process, defendant having had one jury trial on the same issues.

ORDERED, ADJUDGED AND DECREED, that the bankruptcy court is not precluded by the doctrines of res judicata (including collateral estoppel) from making an independent judgment of law and fact on the issues drawn.

ORDERED, ADJUDGED AND DECREED, that the bankruptcy court may take judicial notice of the state court case record, including the pleadings, jury verdict and judgment of the court, to determine whether there shall be a trial de novo.

ORDERED, ADJUDGED AND DECREED, that the material facts not at issue demonstrate by clear and convincing proof

that the verdict of the state court jury together with the court records as a matter of law established that Defendant, Cynthia J. Sneed, is indebted to Plaintiff, Cumis Insurance Society, Inc. for money obtained from her employer by false pretenses, false representations, and actual fraud, and the judgment obtained in the Common Pleas Court of Montgomery County for such moneys is not dischargeable in bankruptcy.