**KILGORE FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,**

v.

**Richard DONNELLY & William P. Donnelly, III, Appellees.**

**No. 1473.**

Court of Appeals of Texas, Tyler.

Oct. 29, 1981.

Rehearing Denied Dec. 10, 1981.

Stephen Patterson, Longview, for appellant.

Kenneth Ross, Longview, for appellees.

McKAY, Justice.

Appellees Richard Donnelly and William P. Donnelly, III sued appellant Kilgore Federal Savings and Loan Association (Federal) for conversion of a savings certificate. Trial was to a jury, and judgment was rendered for appellees for $28,322.23 plus attorney's fees.

The suit was brought under Section 17.41 *et seq.*, Tex.Bus. & Comm.Code Ann. (1973), the Texas Deceptive Trade Practices—Consumer Protection Act, alleging conversion and fraud involving a savings certificate. Federal answered that the Donnellys were not consumers, that they received the benefit of the proceeds of the savings certificate (certificate), and that they are estopped from asserting a cause of action based on conversion. Federal also pled the two year statute of limitations.

Based upon the jury verdict [1] the trial court rendered judgment for appellees for $28,322.23.

█ Federal complains that the trial court erred in submitting issues 2, 6, 8, 9,

---

1. The jury found that (1) Federal took the guardianship certificate as collateral for an individual loan, which (2) constituted fraud, and (3) was the producing cause of damages; (4) Federal converted the certificate and interest from the Donnellys which (5) was a producing cause of damages, and (6) constituted fraud which (7) was a producing cause of damages; (8) Federal represented to Richard Donnelly that he no longer had an interest in the certificate, which (9) constituted fraud and (10) was a producing cause of damages; that (11) Federal refused to deliver the certificate at request of Richard Donnelly which (12) constituted fraud and (13) was a producing cause of damages; (14) legal services to the Donnellys in trial court $6,000, in Court of Appeals $1,500, in Supreme Court $750, and if writ granted $1,500; (15) Loss of money by the Donnellys $15,222.23; (16) The acts in 1, 4, 8 or 11 were

12, 16, 17 and 14 because there was no evidence to support the submission of those issues. In deciding whether there is evidence of probative force to support a finding, we must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

In 1968 Richard G. Donnelly (Richard) and William Paul Donnelly III (William III) received an inheritance from their maternal grandmother. They were then minors, and a guardianship was established through the County Court of Gregg County for their estates with their paternal grandfather, William P. Donnelly, Sr. (William, Sr.) appointed guardian. The guardian purchased two $5,000 certificates from Federal (which were later combined into one for $11,000) in the name of "W. P. Donnelly, Sr., Guardian of the Estate of Richard Granville Donnelly and William Paul Donnelly III."

On August 15, 1969, the guardian pledged the certificate as collateral for an individual (personal) loan of $4,000. A second pledge was made September 24, 1974, for $3,500, and a third on October 10, 1974, for $1,000. The fourth pledge for $1,000 was made December 2, 1974, the fifth on February 6, 1975 for $400, the sixth on June 16, 1975, for $1,000, and the last pledge was on July 22, 1975, for $2,000. These pledges were made without authority from the County Court. The guardian defaulted on the notes and later took bankruptcy.

Richard reached majority on October 4, 1974, and William III attained majority on May 10, 1977.

Gene Caskey, Vice President and Treasurer of Federal testified that William, Sr., Guardian of the Estates of Richard and William III, bought a certificate on January 6, 1971 for $11,000. Caskey did not know that guardianship funds could not be pledged for loans, and learned that fact

when the Donnellys came in to request their money. He mailed statements of the account to the Guardian on March 27, 1978, showing $14,070.36, and on June 30, 1980, showing $15,166.13. He said when the Donnellys came in he told them their grandfather had pledged the certificate for repayment of loans he had obtained and there was no money available for withdrawal. He consulted an attorney and was told Federal was not supposed to make share loans on guardianship accounts, and he learned he had violated the law by making the loans. He further said Federal still had possession of the certificate.

Executive Vice President and manager of Federal, E. B. Mobley, testified he knew there was a problem with the Donnelly certificate about 1979. He said he was not in a position to deliver the funds represented by the certificate except on the advice of counsel, or by direction of the Board of Directors or the Court. Mobley further said that if Caskey had asked he would have concurred in telling Richard that he was not entitled to the certificate and wasn't going to get it, and that would have been his decision. He said he had carried out the desires of the Board in the action Federal had taken. He further said he felt sure Foster Bean, President and Counsel for Federal, told the Board about the problem and the law on guardianship certificates, and that he did not deal personally with William, Sr. and never talked to Richard or William III about the subject matter of the law suit. He said the Board never authorized him to release the funds, but it could be true that the Board authorized him and the attorneys to release the certificate in May, 1979.

Foster Bean, Federal President and attorney, testified the guardianship certificate did not come to his attention until after controversy arose, and he then told Caskey and Mobley that they were not authorized

---

done intentionally and knowingly; (17) $20,000 exemplary damages; (18) The estates of the Donnellys received benefits of (19) $12,900;

and (20) The Donnellys did not ratify the pledge of their certificate to Federal.

to make a loan to the guardian on the guardianship account without a court order. He said he did not see the file until William, Sr. took bankruptcy, and he did see a letter from the Donnelly's attorney asking that the certificate be returned to them. The Board discussed the matter afterward and he told the Board that Federal could not lend money on a guardianship account without a court order.

Richard and William III, on April 1, 1978, asserting they were 18 years old, waived the filing of any final accounting by the Guardian and the issuance, service and return of personal citation upon them, and certified that they had received from William, Sr., Guardian, all property remaining in his hands for them, and released and discharged William, Sr. as Guardian and his sureties from all liability.

Richard testified he went to Federal and talked to Caskey in April, 1978, and was told to come back later. He went back later the same day with his father, William, Jr., and Caskey told him he could not have the certificate because there was money "loaned out against it" by William, Sr.

Counsel for Richard and William III, Ken Ross, testified he estimated he had spent and would spend 75 to 80 hours in preparation and trial of the case, and his fee would be approximately $6,000. He further testified if there was an appeal to the Court of Appeals his additional fee would be $1,500, and if appealed to the Supreme Court an additional fee would be $750, but if writ of error was granted his fee would be $1,500.

Laughton Whitehead, a Longview attorney, testified that his firm charged $75 per hour on ordinary civil cases, and that from the work involved as described to him it was his opinion that 80 hours "work would not be unusual at all."

■ Federal admits that the Donnellys unquestionably established a case of conversion, but maintains that there is no evidence of fraud involved in the conversion, and therefore exemplary damages are not recoverable. We agree. It is without dispute that Federal converted the guardianship funds by illegally making individual loans to the guardian without authority, but it is not every illegal act or conversion which constitutes fraud. It is said in *Jones v. Ross*, 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943):

> The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful.

The record is void of any facts which show a wanton and malicious attitude or act on the part of Federal. An individual loan was made on the guardianship account without authority, but the record does not disclose there was any willful intent or purpose to injure or take advantage of the Donnellys. The definition of fraud in the court's charge does not contain the words "knowingly and intentionally", nor the language "wantonly and malicious." The quote from *Jones v. Ross, supra*, is also found in *Ware v. Paxton*, 359 S.W. 897, 899 (Tex.1962), and in *Southwestern Inv. Co. v. Alvarez*, 453 S.W.2d 138, 141 (Tex.1970). We hold that the Donnellys failed to prove any malice by Federal in the conversion of the guardianship funds.

■ Federal also maintains that it acted in good faith in retaining the certificate after it learned that the guardian had no right to pledge the certificate as collateral for an individual loan. The jury found that Federal's refusal to deliver the certificate to the Donnellys constituted fraud. Federal contends that the record supports its position because William, Sr. testified in his bankruptcy proceeding that he applied the proceeds of the loan to the support of his wards, the Donnellys; that Federal believed

that the Donnellys ratified the action of their grandfather; that Federal believed any cause of action by Richard was barred by the two year statute of limitations, and that it believed that it was not guilty of any violation of the Texas Deceptive Trade Practices-Consumer Protection Act as alleged by the Donnellys. We have carefully reviewed the entire record and we do not find any evidence that such conduct of Federal was malicious or of a wanton nature. The position and claim of Federal had some reasonable basis, and there is no evidence that Federal by retaining the certificate did so willfully and intentionally to injure the Donnellys.

The jury found that Federal told Richard that he no longer had an interest in the certificate, and that such act was fraud. Federal asserts that there was no evidence to support the submission of these issues. We agree. Caskey testified that he told Richard and his father, William, Jr., that "their grandfather had pledged this account for the repayment of these loans, and there was no money available for withdrawal." William, Jr. testified that Caskey explained to them "that we couldn't have the C.D. because there was a loan outstanding against it . . . and told us that because of these notes against it, that he couldn't have the C.D. . . . . He said nothing about Richard's rights to get it . . ." We do not find any evidence in the record to support the submission of issues 8 and 9.

■ Federal further complains that the trial court erred in submitting issue 16 inquiring whether "any of the acts asked about in Issue Numbers 1, 4, 8 or 11 were intentionally or knowingly done by the Defendant through its employees?" The basis of this complaint is that such language is an improper test to determine whether a party is entitled to exemplary damages, and there was no evidence that Federal acted with any reprehensible state of mind which would constitute a basis for an award of exemplary damages, and therefore there was no evidence to support the submission

of issue 17 on exemplary damages. We agree. As we have earlier pointed out exemplary damages may be awarded only if there is evidence of acts wantonly and maliciously done with intent to injure the complaining party or with a reckless disregard of the injurious consequences of his act to others.

■ Punitive damages may not be awarded where it appears the defendant acted in good faith belief that he was exercising some right, *Gardner v. Jones*, 570 S.W.2d 198, 201 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ) and *Cantrell v. Broadnax*, 306 S.W.2d 429, 433 (Tex.Civ. App.—Dallas 1957, no writ) and the mere fact that Federal withheld the converted property from the Donnellys will not support an award of punitive damages. *Allison v. Singh*, 366 S.W.2d 822, 825 (Tex.Civ. App.—El Paso 1963, writ ref'd n.r.e.).

■ The jury awarded the Donnellys' counsel $6,000 in attorney's fees. Federal argues that there is no evidence to support the submission of issue 14 on attorney's fees because such fees are recoverable only as exemplary damages in conversion cases accompanied by fraud or malice, and are not recoverable as part of actual damages in fraud or conversion cases. We sustain this point. We have determined that there are no recoverable exemplary damages against Federal, and attorney's fees are not recoverable as actual damages in fraud cases. *Hennigan v. Harris County*, 593 S.W.2d 380, 385 (Tex.Civ.App.—Waco 1980, writ ref'd, n.r.e.); 26 Tex.Jur.2d *Fraud and Deceit*, § 139 at 125 (1961) and cases therein cited. We hold an attorney's fee is not recoverable.

■ In its last point Federal contends that Richard's cause of action for conversion was barred by the two year Statute of Limitations, Article 5526, Tex.Rev.Civ.Stat. Ann. Federal argues that a cause of action for conversion accrues when the act of conversion is complete; that is, when the initial

taking or detention of property is without authority, a cause of action for conversion arises immediately upon the taking of unlawful possession, and a demand for the return of the property is not a condition precedent to the right to sue for conversion. Federal cites *Davidson v. Atmar*, 243 S.W. 662 (Tex.Civ.App.—Beaumont 1922, no writ) to support this contention. We overrule this point. Richard reached his majority on October 4, 1974. Demand for the certificate was made by Richard in April, 1978, and suit was filed in March, 1979. Where a cause of action is based upon fraud the statute of limitations does not begin to run until the alleged fraud is discovered, or by the exercise of reasonable diligence it might have been discovered. *Ruebeck v. Hunt*, 142 Tex. 167, 176 S.W.2d 738, 739 (Tex.1944). The statute would also begin to run when the plaintiff knew of facts sufficient to excite such inquiry as would have been made in the exercise of reasonable diligence. *Ryan v. Collins*, 496 S.W.2d 205, 211 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.). However, the mere fact that the plaintiff had the opportunity or power to investigate the supposedly fraudulent conduct is not sufficient in law to charge him with knowledge; he must be aware of facts as would cause an ordinary prudent man to investigate. *Bush v. Stone*, 500 S.W.2d 885, 889 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). The diligence required in discovering fraud depends upon the relative circumstances and the relationship of the parties for purposes of determining when the statute of limitations begins to run. *Fitzpatrick v. Marlowe*, 553 S.W.2d 190, 194 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.).

In the case at bar the guardianship was not finally closed until April, 1978, and knowledge of the conversion was obtained at that time. Richard testified that from time to time his grandfather would show him quarterly interest statements from Federal with the amount of interest earned on the certificate, and these statements showed no indication of any outstanding loan against the certificate. He further said he had no reason to believe there was any problem with the certificate. We hold Richard did not fail to act with reasonable diligence in discovering Federal's fraudulent conversion, and that his suit is not barred by the two year statute of limitation.

The Donnellys bring a cross point alleging that the trial court erred in granting a partial summary judgment preventing their cause of action under the Deceptive Trade Practices-Consumer Protection Act because the evidence clearly shows they are consumers as defined by the Act and entitled to bring suit under Section 17.50 of the Act. Section 17.45(4) of the Act defines "consumer" as "an individual, partnership, corporation, or government entity who *seeks or acquires by purchase or lease, any goods or services.*" If, as the Donnellys contend, the purchase of the certificate was the purchase of a service, that purchase was made by their grandfather, William, Sr., for their benefit.

We have not been cited a case, nor have we found one, which holds that a ward, whose property in the hands of a guardian is converted by the party in possession of such property, is a consumer as defined by Section 17.45(4). We hold that the Donnellys were not consumers under Section 17.-45(4). *Riverside Natl. Bank v. Lewis*, 603 S.W.2d 169, 173–75 (Tex.1980). The cross point is overruled.

In their second cross point the Donnellys assert that the trial court erred in offsetting an amount representing the guardian's cost of maintenance as a benefit to them against the value of the certificate. They argue that any maintenance and support furnished by their grandfather was not shown to be attributable to loans made on the certificate. The Donnellys acknowledged that they received at least the $12,-900 found by the jury from their grandfather in maintenance and cost of living during their stay with him. The question raised by the cross point, however, is wheth-

er the District Court was authorized to off-set the $12,900 maintenance cost from the value of the certificate. There is no evidence in the record that the guardian used the exact funds he received from Federal on his personal loans to pay for the support and maintenance of his wards, the Donnellys. The record indicates that from 1963 to 1969 the Donnellys stayed part time with their grandfather and part time with their father, but in 1969 they were not living with their grandfather except for a short period of time—William III possibly lived with the grandfather for nine months.

This second cross point is sustained. In our view the trial court was not authorized under the record to offset the cost of maintenance of the minors against the value of the certificate. The funds were unlawfully obtained by the guardian, and they were unlawfully converted by Federal. Where the funds of a guardianship are so converted and so obtained unlawfully, the estate of the then minors should not be penalized by an offset against their guardianship account. Expenditures made by a guardian as authorized by law made on account of his ward may be subject to offset, but expenditures made by the guardian from funds obtained without authority or in defiance of the requirements of law are not subject to an offset. *McKinney v. Texas Bank and Trust*, 295 S.W.2d 935, 938 (Tex.Civ.App.—Dallas 1956, no writ); *Bagwell v. McCombs*, 31 S.W.2d 835, 837 (Tex.Civ.App.—Dallas 1930, no writ); and *Anderson v. Steddum*, 194 S.W. 1132, 1134 (Tex.Civ.App.—Texarkana 1917, aff'd at 222 S.W. 1090, 1091). Even though the cost of maintenance may have been partially paid with funds borrowed personally by the guardian, in our view Federal, having wrongfully converted the certificate, was not entitled to an offset of any such funds.

Judgment of the trial court is reversed, and judgment is rendered that the Donnellys recover from Federal the sum of $15,222.23 (being the value of the certificate at the date the trial court's judgment became final) plus interest on judgment at the rate of 9% per annum.