In re George Marvin HINES, Debtor.

John S. STANSBERRY, Plaintiff,

v.

George Marvin HINES, Defendant.

Bankruptcy No. 3–83–01434.
Adv. No. 3–83–0898.

United States Bankruptcy Court,
E.D. Tennessee.

March 7, 1984.

Rainwater, Humble & Vowell, Donald K. Vowell, Knoxville, Tenn., for plaintiff.

Lynn Tarpy, Knoxville, Tenn., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLIVE W. BARE, Bankruptcy Judge.

This case involves a dischargeability question arising out of an alleged willful and malicious injury inflicted during a fist-fight between two individuals. 11 U.S.C.A. § 523(a)(6) (1979). Trial was held January 24, 1984.

I

The plaintiff, John S. Stansberry (Stansberry), and the defendant, George Marvin Hines (Hines), had been involved in a previous encounter resulting in the filing of a union grievance by Stansberry against Hines wherein Stansberry charged that Hines had locked him out of a union meeting over which Hines was presiding. This grievance was withdrawn by Stansberry in a letter dated January 16, 1983.

During the course of another union meeting held at the Quality Inn at Sweetwater, Tennessee, on the night of April 1, 1983, a vote on a proposed assessment was taken. Afterwards, some of the members, including Stansberry and Hines, retired to the lounge area of the Inn while the vote was being counted. A short time later, as Stansberry was leaving the lounge, Hines approached him and requested that he accompany him into the hall area outside of the lounge. Hines made this request in a normal, nonthreatening tone of voice. Stansberry testified that he went out of the door first and, before any words were spoken, Hines struck him in the face without warning, breaking his nose and causing considerable bleeding. According to Stansberry, Hines then proceeded to beat him vigorously.

Stansberry immediately left the Inn and drove to Knoxville, planning to stop at Park West Hospital, a distance requiring approximately a half-hour's drive. By the time he arrived in Knoxville, the bleeding was under control, and he proceeded to his home where he spent the evening. He went to St. Mary's Hospital the following morning. Ex. 3. He was treated at the hospital and was then referred to a specialist who put him in the hospital approximately a week later for surgery on his nose, including the reworking of some cartilage.

On the Monday morning following the April 1st incident, Stansberry went to Madisonville, Tennessee, and swore out a criminal warrant against Hines, charging him with assault and battery. Approximately a week later, Hines swore out a criminal warrant against Stansberry, charging him with assault and battery. At a preliminary hearing held at Madisonville, Tennessee, Hines was bound over to the Grand Jury. The charge against Stansberry was dismissed.

Florine Gordon, the manager of the lounge, was stationed just inside the door of the lounge on the evening in question when she heard a loud thud. She opened the door of the lounge, saw two men fighting in the hall, and immediately locked the lounge door.

Another employee of the lounge, Debra Culvahouse, was stationed outside the door at a table. She was passing a note through the door to Ms. Gordon when she heard a commotion. Both Ms. Gordon and Ms. Culvahouse looked through the door into the hallway area when they heard the noise. Neither saw anyone in the hall except the two men fighting, Stansberry and Hines.

Hines testified that he was in the lounge discussing the vote with some of his fellow union members when he asked Stansberry to step into the hall so that he might advise Stansberry of the vote. He testified there was some conversation between them in the hall, which resulted in Stansberry throwing a punch at him. Hines further testified that he partially blocked that blow and then retaliated by striking Stansberry, knocking him to the floor.

James Gillespie, a union member who testified for the defendant, stated that he was just inside the door of the lounge when Stansberry and Hines went out the door and that he went out the door immediately

behind Hines. Gillespie testified that Stansberry struck the first blow. The court finds material discrepancies, however, between the testimony of Gillespie and Hines. Gillespie's testimony of the conversation between the parties differs from Hine's version. Further, no other person saw Gillespie at any time in the hallway—neither the two ladies who worked in the lounge, nor either of the parties. By the same token, Mr. Edwin Hayes, whose testimony was before the court by transcript of the state court hearing held in Madisonville, testified that he was standing just inside the door of the lounge, that he saw Stansberry and Hines leave the lounge, but that he did not see Gillespie leave the lounge. He did not, however, state definitely that Gillespie did not leave the lounge. Although Hines testified that he knocked Stansberry to the ground with a punch, Gillespie testified that Hines "tackled" Stansberry and put him on the ground.

Hines' explanation for asking Stansberry to step into the hall also is suspect. Hines says that although he had advised several members of the outcome of the union vote *inside* the lounge, he asked Stansberry to step into the hall area since the band had started up, and he was afraid Stansberry could not hear him.

Testimony also indicated that although Hines was wearing glasses earlier in the evening, he had removed his glasses prior to asking Stansberry to step into the hall.

On April 1, the date of the incident, Stansberry was taking a blood-thinning medication which could have potentially resulted in his death from severe bleeding in a short period of time. Stansberry was also under a rated disability of 20 percent to one leg and 30 percent to the other, partially related to phlebitis.

The court does not believe that a rational person with Stansberry's medical condition would start a fight which could result in serious injury or possible death. Observing Stansberry's demeanor on the stand, the court is satisfied that he is not an irrational person.

Exhibit 2, a facial picture of Stansberry taken the morning after the fight, indicates that the blow received by Stansberry was unexpected. During oral argument of counsel, it was stated that Stansberry was a former golden gloves boxer. The court notes that, had Stansberry thrown the first punch, he would certainly have expected and been prepared for a return blow and would have at least partially blocked the return blow instead of taking that blow directly on his face and nose.

■ The court finds that Stansberry has carried the burden of proof that Hines inflicted upon him a willful and malicious injury. The assault was unprovoked, without cause, and unexpected.

■ Stansberry also alleges malicious prosecution resulting from the state court charges filed against him by Hines. The evidence is insufficient, however, to support a charge of malicious prosecution.

## II

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

In order to fall within the exception of section 523(a)(6), the injury to an entity or property must have been willful and malicious. An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word "willful" means "deliberate or intentional", a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 Collier on Bankruptcy ¶ 523.16 (15th ed. 1983).

Hines' act in striking Stansberry in the face was deliberate and intentional. It was wrongful and without just cause. It there-

fore constitutes a willful and malicious injury within the meaning of § 523(a)(6) of the Bankruptcy Code.

The debt having been held nondischargeable, the remaining issues shall be determined in a bench trial[1] commencing April 16, 1984, at 9:00 a.m.

---

1. After the trial on the dischargeability issue on January 24, 1984, the debtor, on February 1, 1984, moved for a jury trial on the "issue of liability and damages." The motion was de-

nied March 5, 1984, as not having been filed within the prescribed time, Bankruptcy Rule 9015(b).