**In the Matter of Richard P. CHURCH, II, Debtor.**

**Jim and Kay DODSON, Plaintiffs,**

v.

**Richard P. CHURCH, II, Defendant.**

**Bankruptcy No. 384–31229–F–11.**
**Adv. No. 385–3058.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 22, 1987.

426

F. Dean Armstrong, Law Offices of F. Dean Armstrong, P.C., Dallas, Tex., for plaintiffs.

Elizabeth A. Bates, Palmer & Palmer, P.C., Dallas, Tex., for debtor/defendant.

## MEMORANDUM DECISION

HAROLD C. ABRAMSON, Bankruptcy Judge.

At Dallas, this 16th day of December, 1986, came on before the court the above styled adversary proceeding in which Jim and Kay Dodson (the "Plaintiffs") object to the discharge of Richard P. Church (the "Debtor") from his debt to them. This proceeding is a core proceeding under 28 U.S.C. sections 1334 and 157, as well as 11 U.S.C. sec. 523. This memorandum shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052.

The Debtor was the sole shareholder and director of an entity known as "Contemporary Homes by Rick Church, Inc." ("Contemporary Homes") and was engaged in the business of building homes in the Coppell, Texas area. The Plaintiffs approached the Debtor regarding the constructing of a home for themselves in early 1977. The Debtor represented to the Plaintiffs that he had the ability to construct a quality home for them based upon plans and specifications derived from ideas submitted by the Plaintiffs. The Debtor represented to the Plaintiffs that he would take their plans and dreams for a home and turn them into a custom home, "just the way they wanted it". On October 30, 1977 the parties agreed upon a design and a price (a "cost-plus" contract, estimated at $142,000) and the Debtor, through Contemporary Homes, proceeded to build the Plaintiffs' custom home.

The home did not turn out well. The Plaintiffs found that the roof had been constructed with No. 2 and 3 grade cedar shingles instead of the No. 1 grade shingles promised. The roof was so poorly constructed that it immediately leaked in large quantities which caused extensive interior damage. The framing of the home was promised to be constructed with No. 2 grade lumber, but it was in fact constructed with an inferior grade of lumber. There was also a south wall to the living room which was to be a two story wall and non-load bearing. After the home was completed, in an effort to shore up the sagging ceiling, the Debtor placed a beam above the ceiling which was tied to this south wall. The wall cracked, a window fell out, and subsequent inspection showed that the wall was subject to collapse under the stress of a strong wind. The home was unsafe and did not meet the applicable building code standards.

The evidence before the court indicates that these substitutions were indeed made with the Debtor's knowledge and that the Debtor had no intention of either correcting the situation or of informing the Plaintiffs of what had been done. The substitutions were such that the Plaintiffs would not have known of them were it not for the immediate onset of the problems noted. The record further shows that, prior to the final closing, the Debtor was somewhat cooperative in addressing the Plaintiffs' concerns about the quality of their home (to the extent that he would sometimes do something, however ineffectively, to address the repeated complaints of the Plaintiffs), but that after the final closing, the Debtor became definitely uncooperative and refused to even return their telephone calls. After numerous unsuccessful attempts to bring the home up to the standards called for in the parties' agreement, the Plaintiffs filed suit against the Debtor and Contemporary Homes in the 95th Judicial District Court of Dallas County, Texas.[1] The Plaintiffs alleged, *inter alia,* fraud, the issue was tried to a jury, and the jury unanimously found for the Plaintiffs. An appeal by the Debtor was dismissed. The Debtor filed bankruptcy on August 17, 1984.

The Plaintiffs have motioned this court for summary judgment and urge that the Debtor is collaterally estopped from contesting the issues determined in the state court proceeding. They argue that the state court judgment and the supporting

---

1. Jim Dodson and Wife, Kay Dodson v. Richard P. Church, Tommie Frie, Individually and d/b/a Contemporary Homes By Rick Church, Inc., Cause No. 81–14634–D (95th Judicial Dist. Dallas County, Texas).

record is sufficient to deny the Debtor a discharge under the applicable provisions of 11 U.S.C. sec. 523. The court has before it the transcript of the state court trial, the special issues to the jury and their answers, and the judgment of the state court. This court is to determine whether collateral estoppel applies, whether the Plaintiffs are entitled to judgment as a matter of law, and, if so, the extent of the non-dischargeable debt so determined.

■ The historic practice of leaving dischargeability determinations to non-bankruptcy courts has been changed since the passage of the 1970 amendments to the Bankruptcy Act. Pub.L. No. 91–467, Sec. 6 (Dec. 18, 1970). Now, under the Bankruptcy Code, 11 U.S.C. sec. 523(c), the bankruptcy court has exclusive jurisdiction to determine the dischargeability of the type of debts at issue here. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Protection of this exclusive jurisdiction is of paramount concern when a prior non-bankruptcy court adjudication is asserted as grounds for denying the discharge of a debt so evidenced. Thus, the doctrine of *res judicata* or "claim preclusion" has no application to the determination of the dischargeability of a judgment debt. *Id.* The law regarding collateral estoppel or "issue preclusion" in discharge matters is not susceptible to so ready a formulation. There are numerous considerations which must be addressed before a bankruptcy court can hold that a Debtor is barred by a prior judicial determination from obtaining a discharge of a debt determined therein. The Supreme Court, in *Brown,* stated:

> If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of sec. 17 [of the Bankruptcy Act, similar to sec. 523 of the Bankruptcy Code, *see, Matter of Shuler,* 722 F.2d 1253, 1255 (5th Cir.1984)] then collateral estoppel, in the absence of countervailing statutory policy, would bar re-

litigation of those issues in the bankruptcy court.

*Brown, supra,* at 139 n. 10, 99 S.Ct. at 2213 n. 10.

■ Taking this language as our guidepost, the court applies three complex and distinct legal tests to decide whether collateral estoppel should be applied in a given case. The first test concerns the preclusive effect given a state court judgment by courts of that state. The second test is the federal test for collateral estoppel. The third test is a global view of the prior proceedings and the posture of the parties. Lastly, the court analyses the components of the allegedly non-dischargeable debt to determine their nature under the applicable provisions of the Bankruptcy Code.

## I.

■ The reference in *Brown* to an "absence of countervailing statutory policy" is understood as a reference to the full faith and credit statute, 28 U.S.C. sec. 1738.[2] The effect given a state court judgment by the bankruptcy court must be consistent with the effect that would be given that decision by other courts of that state. The federal courts are generally bound by the full faith and credit statute to refer to the preclusion law of the state whose court rendered the subject decision. *Cf., Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). This aspect of the collateral estoppel inquiry is most properly viewed as a threshold matter, which must be determined affirmatively before the remaining issues are taken up. The full faith and credit due a state court judgment is manifested by the *res judicata* or collateral estoppel effect accorded that judgment. *Matter of Allman,* 735 F.2d 863, 866 n. 3 (5th Cir.1984); *Compare Matter of Wintrow,* 57 B.R. 695, 702–03 (Bankr.S.D.Ohio 1986) (discussing Ohio law of preclusion).

**2.** The court refers the reader to the discussion in Ferriell, *The Preclusive Effect of State Court*

*Decisions in Bankruptcy* (Second Installment), 59 Am.Bankr.L.J. 55, 68–69 (1984).

In Texas, essential issues of fact adjudged by a court of competent jurisdiction are binding in a subsequent action by the same parties and those who stand in privity with them, even though the subsequent action is based on a different cause of action. *Wilhite v. Adams,* 640 S.W.2d 875 (Tex.1982); *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361 (Tex.1971). Thus, the Texas judgment before the court would be accorded collateral estoppel effect by a Texas court. While a discharge determination in bankruptcy is governed by more complex issues than the full faith and credit statute alone, *Matter of Allman, supra,* the law of issue preclusion under Texas decisions is consistent with applying collateral estoppel in this case.

## II.

■ Having seen that the judgment before this court would serve to preclude relitigating the facts determined therein in a Texas court, the bankruptcy court then applies the federal test for the application of collateral estoppel. The factual issues determined in the prior proceeding must be: (i) identical to the issues in the present proceeding; (ii) they must have been actually litigated; and (iii) they must be necessary to the resulting judgment. *White v. World Finance of Meridian, Inc.,* 653 F.2d 147 (5th Cir.1981); *Matter of Merrill,* 594 F.2d 1064 (5th Cir.1979).

■ This aspect of the court's inquiry is not without difficulty. Because of the exclusive jurisdiction given the bankruptcy courts to determine the dischargeability of debts under 11 U.S.C. sec. 523(c), the satisfaction of the federal test for applying collateral estoppel is not determinative. In several opinions the Court of Appeals for the Fifth Circuit has addressed this issue. This court's understanding of these opinions is summarized as follows: Collateral estoppel may apply to subsidiary facts actually litigated and necessarily decided in a prior judicial proceeding. *Matter of Shuler,* 722 F.2d 1253 (5th Cir.1984). The bankruptcy court is not confined to a review of the judgment rendered in the prior proceeding when considering discharge questions; therefore, the prior judgment must be supported by detailed facts sufficient as findings to meet the federal test of non-dischargeability and allow the bankruptcy court to discern from the record the subsidiary facts upon which is based the asserted non-dischargeability of the debt in issue. *Matter of Poston,* 735 F.2d 866 (5th Cir.1984); *Matter of Allman,* 735 F.2d 863 (5th Cir.1984); *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980); *surveyed in* Pronske *Bankruptcy,* 17 Tex.Tech.L.Rev. 448 (1986).

The "identical standards" requirement of the language quoted from *Brown, supra,* is critical to the analysis of the case at bar. The vast majority of bankruptcy courts have held that, to warrant denial of a discharge under 11 U.S.C. sec. 523, the evidence must be "clear and convincing". *See,* Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* (First Installment) 58 Am.Bankr.L.J. 349, 362 (1984). The "clear and convincing" evidentiary standard has been described by the United States Supreme Court as an intermediate standard, between a preponderance of the evidence and proof beyond a reasonable doubt; requiring of the unbiased trier of fact a firm belief or conviction in the truth of the matters allegedly shown by the evidence. *Oriel v. Russell,* 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929). Several bankruptcy courts have held that collateral estoppel would not apply to judicial determinations when the evidentiary standard applied was that of a preponderance of the evidence rather than the clear and convincing standard employed in dischargeability determinations. *See e.g., In re D'Annolfo,* 54 B.R. 887 (Bankr.D.Mass. 1985); *Matter of Schwartz,* 44 B.R. 266 (Bankr.D.Minn.1984); *In re Huriash,* 26 B.R. 372 (Bankr.S.D.Fla.1982); *In re Iannelli,* 12 B.R. 561 (Bankr.S.D.N.Y.1981).

Consistent with the Texas law regarding submission of issues to a jury, the issues in the prior proceeding were submitted to the jury on the basis of a preponderance of the evidence. Issues of fact determined by a

jury in civil proceedings in Texas are uniformly decided on the evidentiary standard of a "preponderance of the evidence". *Sanders v. Harder,* 148 Tex. 593, 227 S.W.2d 206 (1950). Even in cases where the required evidentiary standard is the more exacting standard of "clear and convincing" evidence, the issues are to be submitted to the jury on the basis of a preponderance of the evidence and the trial judge is limited to ordering a new trial if he finds the evidence insufficient. *Boenker v. Boenker,* 405 S.W.2d 843 (Tex.Civ.App.—Houston 1966, writ ref'd w.o.j.). Texas courts seemingly regard the "clear and convincing" standard as chiefly a precautionary device to insure that in certain matters the judiciary give due consideration to the weight of the evidence. 35 Tex.Jur.3d *Evidence* sec. 106 (Bankroft-Whitney 1984).

It is clear that, were this court to adopt the reasoning employed by the bankruptcy courts cited above, application of collateral estoppel in this case would be foreclosed. Yet, the implication of the binding precedents in Fifth Circuit jurisprudence is to permit collateral estoppel where (other obstacles not considered) the record supporting the state court judgment is sufficiently detailed.[3] In this case the court has before it the entire transcript of the state court proceeding. This provides as detailed a record as is possible. Moreover, while the vast majority of courts passing on the matter have required "clear and convincing" evidence, the evidentiary standard applicable to discharge matters has not been uniformly agreed upon by the courts. This court agrees with the vast majority of courts requiring "clear and convincing" evidence before a debt is excepted from discharge under 11 U.S.C. sec. 523; but when a state court judgment is supported by a record sufficiently detailed to allow an independent assessment of the evidence, the rationale for requiring that the prior judgment be decided by clear and convincing evidence loses much of its persuasive appeal.

The "clear and convincing" standard employed by the majority of bankruptcy courts is not mandated by any specific provision of the Bankruptcy Code and finds its origins in the judicial policies of strictly construing the statutory exceptions to discharge, *In re Barlick,* 1 B.C.D. 4112 (Bankr.R.I.1974) (Votolato, Bankruptcy Judge); *In re Huff,* 1 B.R. 354 (Bankr.D. Utah 1979), so as to preserve the "fresh start" which bankruptcy proceedings should afford the debtor. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Matter of Cross,* 666 F.2d 873 (5th Cir.1982); *In re Carothers,* 22 B.R. 114 (Bankr.D.Minn.1982). Yet, the benefits of the bankruptcy discharge and the "fresh start" thereby obtained are intended for the honest debtor. *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *In re Dohm,* 19 B.R. 132 (Bankr.N.D.Ill.1981).

The import of this policy of favoring the honest debtor with the "fresh start" afforded by the discharge from his debts is to militate against an automatic or technical determination of the applicability of collateral estoppel in discharge matters based upon the evidentiary standard employed in the non-bankruptcy forum. Indeed, analogous to the statement by Wigmore: "The application of the phrase 'preponderance of the evidence' is apt to lead the judicial discussion close to the fallacious quantitative or numerical theory of

---

**3.** The Ninth Circuit has held that a prior judgment may establish a *prima facie* case of non-dischargeability, which the debtor is entitled to refute on the basis of all relevant evidence. *In re Rahm,* 641 F.2d 755 (9th Cir.1981); *In re Houtman,* 568 F.2d 651 (9th Cir.1978). Considering the extent of the judicial inquiry which this court finds necessary in applying collateral estoppel, one may wonder whether there is any substantial difference between proceedings conducted by courts that follow the Ninth Circuit in declining to accord any preclusive effect to prior judgments and the principles enunciated herein. *Compare In re Moultrie,* 51 B.R. 368 (Bankr.W.D.Wash.1985) (discussing precedents and analyzing *prima facie* case), and *Matter of Sneed,* 13 B.R. 151 (Bankr.S.D.Ohio 1981) (evidence consisting of judgment and record of prior state court proceeding established non-dischargeability of debt).

testimony"[4]—the technical application of collateral estoppel based upon evidentiary standards would lead to the fallacious exaltation of form over substance. Nothing but its own credibility would prevent evidence that is preponderant from also being "clear and convincing". The question is really one of belief; the weight of the evidence is the controlling factor. Sanders, *The Anatomy of Proof in Civil Actions,* 28 La.L.Rev. 297 (1968). In its opinion in *Matter of Shuler, supra,* the Court of Appeals for the Fifth Circuit quoted with approval the discussion in *Spilman v. Harley,* 656 F.2d 224, 227–28 (6th Cir.1981), which instructs the bankruptcy court to look to the entire record supporting the prior judgment. Thus, there are ample grounds for the bankruptcy court to determine the sufficiency of the evidence supporting the state court judgment without conducting a needless trial *de novo.*

■ The exclusive jurisdiction of the bankruptcy courts to determine the dischargeability of debts under 11 U.S.C. sec. 523 is grounded in the desire for a national, uniform standard. *Brown v. Felsen,* 442 U.S. at 136 n. 7, 99 S.Ct. at 2211 n. 7. H.R.Rep. No. 1502, 91st Cong., 2d Sess. 9 (1970), *reprinted in* 1970 U.S.Code Cong & Ad.News 4156, 4163. Applying collateral estoppel according to the reasoning of *In re D'Annolfo, supra; Matter of Schwartz, supra; In re Huriash, supra;* and *In re Iannelli, supra,* would defeat that policy by hinging the collateral estoppel effect of a state court judgment on the non-uniform standards of evidence employed by the various state jurisdictions while ignoring the overriding similarity of the common law applied by the state courts.[5] Indeed, it is not the ultimate question of dischargeabili-

ty that is governed by collateral estoppel, rather it is the extent to which the prior judicial proceedings satisfy the proponent's burden of proof. *Franks v. Thomason,* 4 B.R. 814, 820–21 (N.D.Ga.1980); *Matter of Halpern,* 50 B.R. 260 (Bankr.N.D.Ga.1985); *Cf., Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184 (2d Cir.) *cert. denied,* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955). When the case is properly presented, the evidence supporting the judgment is before the bankruptcy court and there is no reason to, in effect, turn the bankruptcy court into an appellate court of last resort for the frustration of an aggrieved litigant. To do so would unfairly disadvantage precisely those creditors whose claims Congress has determined should survive the bankruptcy process. *See In re Thompson,* 39 B.R. 270 (Bankr.W.D.Ky.1984). Thus, this court holds that a state court judgment is not to be denied collateral estoppel effect solely because the evidentiary standard employed was that of a "preponderance of the evidence" rather than the "clear and convincing" standard obtaining in bankruptcy court dischargeability determinations.

### III.

Additionally, this court looks to the overall posture of the parties to the prior litigation to determine whether that litigation was conducted with a view to pre-determine any aspect of the discharge question. This issue overlaps somewhat the third prong of the federal test for applying collateral estoppel (necessary to the resulting judgment), but the thrust of the inquiry is whether bankruptcy was anticipated by the parties and the non-bankruptcy proceedings skewed with the specific intention to obtain a non-dischargeable judgment.[6] The

---

4. Wigmore on Evidence sec. 2498 (Chadbourne rev. 1981).

5. *Compare In re Brown,* 66 B.R. 13 (Bankr.D. Utah 1986) (Utah law requires same standards as 11 U.S.C. 523), and *In re D'Annolfo,* 54 B.R. 887 (Bankr.D.Mass.1985) (jury finding based on fair preponderance of the credible evidence would not support collateral estoppel). *See also* Ferriell, *The Preclusive Effect of State Court*

*Decisions in Bankruptcy,* (First Installment) 58 Am.Bankr.L.J. at 362–63 (1984).

6. A central purpose of Congress in granting exclusive jurisdiction to bankruptcy courts under the Bankruptcy Act, sec. 17(c), and the Bankruptcy Code, sec. 523(c), was "to effectuate more fully the discharge in bankruptcy by making it less subject to abuse by harassing creditors". H.R.Rep. No. 19–1502, 1970 U.S.Code, Cong., & Ad.News at 4156.

court has afforded the Debtor a thorough hearing on the issues presented. *See Spilman v. Harley*, 656 F.2d 224, 227–28 (6th Cir.1981). The fraud claims of the Plaintiffs were the essence of the prior state court proceedings and the record shows that the issues were vigorously contested by the Debtor. This court sees no indication that the parties anticipated bankruptcy or that they proceeded with a view to pretermit any aspect of this discharge question. *See Brown v. Felsen*, 442 U.S. 127, 136–37, 99 S.Ct. 2205, 2211–12, 60 L.Ed.2d 767 (1979). This court has determined, for the reasons given above, that the exclusive jurisdiction of the bankruptcy court in discharge matters is compatible with applying collateral estoppel in this case.

■ For the reasons given, this court views the judgment and record of the prior state court proceedings as establishing those facts that were in issue, that were actually litigated, and that were necessary to the prior judgment. *Matter of Shuler, supra.* In cases such as this, the debtor is not precluded from arguing the record or showing circumstances that demonstrate an injustice would result from giving those facts their effect in the context of the dischargeability question; but in this case the facts that are sufficiently supported by the record are taken as established.

## IV.

Having determined that collateral estoppel may properly be applied here, this court now turns to the merits of the Plaintiffs' motion for summary judgment. For the Plaintiffs to prevail, the record before the court must establish the absence of any material issue of fact and that the Plaintiffs are entitled to judgment as a matter of law. Bankruptcy Rule 7056; *In re Independent Clearing House Co.*, 41 B.R. 985 (Bankr.D.Utah 1984).

■ The Plaintiffs contend that the judgment debt is for "actual fraud" or "willful and malicious injury" and, hence, nondischargeable under 11 U.S.C. sections 523(a)(2)(A) and (a)(6) respectively. We first consider the issues under sec. 523(a)(2)(A). Finding a debt to be non-dischargeable for "actual fraud" requires a showing that (1) the debtor made a false representation, (2) with the purpose and intention of deceiving the creditor; (3) that the creditor reasonably relied on such representation, and (4) that the creditor sustained a loss as a result of the representation. The fraud must be positive, not implied; and the creditor must establish each element by clear and convincing evidence. *In re Hunter*, 780 F.2d 1577 (11th Cir. 1986).

■ The state court trial concerned the representations and actions of the Debtor, Contemporary Homes, and an associate of the Debtor, Tommie Frie; and their effect on the Plaintiffs. In response to special issue number 1A, the jury determined that representations concerning the intention of Contemporary Homes regarding the performance of various aspects of the homebuilding agreement were fraudulently made according to criteria substantially identical to those set out in *Hunter, supra.* The jury determined, in response to special issue number 6, that the Debtor was the alter ego of Contemporary Homes; but that Tommie Frie was not. The jury also determined, in response to special issue number 1G, that the Debtor had actual awareness of the representations attributed to Contemporary Homes, that he failed to disclose their falsity, and that he benefitted thereby. These findings are sufficient to establish the non-dischargeability of the debt attributable to the fraud. *Matter of Walker*, 726 F.2d 452 (8th Cir. 1984); *Gardner v. American Century Mortgage Investors*, 577 F.2d 928 (5th Cir. 1978); *In re Kay*, 60 B.R. 174 (Bankr.C.D. Cal.1986); *In re Oswald*, 40 B.R. 465 (Bankr.S.D.Fla.1984). The record shows conclusively that this is not a breach of contract action expanded into a fraud claim, but rather that the fraud claim is the primary basis for the judgment. *See In re Leger*, 34 B.R. 873 (Bankr.D.Mass.1983); *In re Huckins*, 17 B.R. 620 (Bankr.D.Maine 1982). There being no material issue of fact regarding the sec. 523(a)(2)(A) claims

of the Plaintiffs, this court holds that Plaintiffs are entitled to judgment as a matter of law and the portion of their claim attributable to the actual fraud of the Debtor is not dischargeable.

■ The second theory advanced by the Plaintiffs is that discharge of the judgment debt is barred under 11 U.S.C. sec. 523(a)(6) as a debt "for willful and malicious injury by the Debtor to another entity or the property of another entity". There is disagreement concerning the effect of the statutory language. Under one line of reasoning, such an injury is one which results from a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse. *In re Hines,* 37 B.R. 553 (Bankr.E.D.Tenn.1984); 3 Collier on Bankruptcy, para. 523.16 (15th ed. 1983). The cases following this interpretation hold that there is no requirement that the Debtor specifically intend to injure the claimant; rather what is required is that the act have the required character and be intentionally done. *Matter of Quezada,* 718 F.2d 121 (5th Cir.1983); *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986); *In re Held,* 734 F.2d 628 (11th Cir.1984). Other cases require specific intent to injure. *In re Compos,* 768 F.2d 1155 (10th Cir.1985); *In re Long,* 774 F.2d 875 (8th Cir.1985).[7]

The Plaintiffs argue in their brief that: "[w]illful and malicious injury by a debtor to another can occur equally by fraudulent conduct as by physical force". (Plaintiffs' trial brief at p. 22). The argument is buttressed by the further finding of the jury that the Plaintiffs suffered emotional distress and awarding damages therefor of $5,000.00 against Contemporary Homes. The court infers from this that the Plaintiffs would have the court construe sec. 523(a)(6) as encompassing sec. 523(a)(2)(A) and, in effect, represent little more than an alternate ground for denying the discharge based on identical conduct.

While the record is compelling in supporting the inference that the Plaintiffs have suffered harm resulting from willful and intentionally inflicted injury, the absence of a specific finding as to a distinct act, other than the fraud, causing such an injury precludes this court from finding that the Plaintiffs have demonstrated the absence of material issues of fact regarding their sec. 523(a)(6) claim. It is significant in making this determination that the

7. The findings by the jury having the most direct bearing on this issue are the jury's response to special issue numbers 2, 2A, 2B, and 3C. The questions and responses were:

QUESTION 2
Did Contemporary: (a) represent that the goods and services used in the construction of the house were of a particular standard, quality, or grade, when in fact they were not; or (b) fail to disclose to the Dodsons information concerning goods or services which was known at the time of the transaction, intending to induce the Dodsons into a transaction they would not have entered had the information been disclosed; or (c) engage in an unconscionable action or course of action toward the Dodsons?

"Unconscionable action or course of action" means an act or practice which, to a person's detriment, (a) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (b) results in a gross disparity between the value received and consideration paid, in a transaction involving the transfer of consideration.

ANSWER: a. yes (c) yes b. yes

If you answer Question 2 "Yes", then answer questions 2A and 2B; otherwise do not.

QUESTION 2A
Was such action or failure to act a producing cause of actual damages to the Dodsons?

ANSWER: yes

QUESTION 2B
Was such action or failure to act done knowingly by Contemporary?

ANSWER: yes

QUESTION 3C
Find from a preponderance of the evidence what amount of money, if any, should be assessed against Contemporary, Church and Frie as exemplary damages.

"Exemplary damages" means an amount that you may in your discretion award as an example to others and as a penalty or by way of punishment, in addition to any amount you have found as actual damages.

Answer separately as to each person in dollars and cents, or none.

| ANSWER: | Contemporary | $25,000 |
| --- | --- | --- |
| | Church | $25,000 |
| | Frie | –0– |

exemplary damages award was in response to instructions permitting such an award not expressly predicated on a finding of "malice", but instead as a penalty or a punishment and an example to others. Moreover, the finding of mental distress is not accompanied by a finding of intent or a finding of any conduct not plausibly encompassed by the findings of fraud. Under Texas law, an award for mental distress or mental suffering requires a showing of an intentional tort, gross negligence, willful and wanton disregard, or accompanying physical injury. *Farmers & Merchants State Bank v. Ferguson*, 617 S.W.2d 918 (Tex.1981). This court cannot say with certainty which basis applies to the award. For these reasons, this court cannot grant the Plaintiffs' motion for summary judgment as to the Section 523(a)(6) claim. The unclear relation between Section 523(a)(6), the special issues, and the answers of the jury require this court to find that the "actually litigated" prong of the federal test for the application of collateral estoppel has not been sufficiently demonstrated as to the Section 523(a)(6) claim. *Wheeler v. Laudani (In re Laudani)*, 783 F.2d 610, 14 B.C.D. 239 (6th Cir.1986); *In re Caldwell*, 60 B.R. 214 (Bankr.E.D.Tenn.1986); *Cf., Klemens v. Wallace*, 62 B.R. 91 (D.N. M.1986).

We now turn to the determination of the non-dischargeable debt determined by this summary judgment proceeding. The judgment of the state court sets out the damages as follows:

| | | |
|---|---|---|
| (a) | actual damages (cost of repair) | $24,782.50 |
| (b) | Interest on $24,782.50 at 6% from July 8, 1980 to May 14, 1984 | 5,727.84 |
| (c) | multiple damages under the Texas Deceptive Trade Practices Act, Tex.Rev.Civ.Stat.Ann. sec. 17.50(b)(1) (1979) (2 x 1,000) | 2,000.00 |
| (d) | mental distress | 5,000.00 |
| (e) | punitive damages against Defendant Contemporary Homes by Rick Church. Inc. | 25,000.00 |
| (f) | attorney's fees (trial) | 25,162.00 |
| | | $87,672.34 |

The Debtor was also adjudged separately liable for an additional $25,000.00 punitive damages; duplicating the punitive damages awarded against Contemporary Homes and making the total judgment against the Debtor $112,672.34.

Since the court has determined that summary judgment is appropriate as to the Section 523(a)(2)(A) claim of the Plaintiffs, it follows that the debt attributable to the "actual fraud" of the debtor should similarly be accorded summary treatment. The difficulty arises from the conflicting case law and the ambiguity of the statute. Section 523(a)(2) excepts from discharge any debt "for money, ... *to the extent obtained by —(A) ... actual fraud, ....*" (emphasis supplied).

The Plaintiffs argue that the entire judgment debt must be found to be non-dischargeable. They cite *Birmingham Trust National Bank v. Case*, 755 F.2d 1474 (11th Cir.1985), in support of this proposition. In that opinion the Court of Appeals held that, when a debt is declared non-dischargeable on the basis of a false representation in a financial statement, the entire debt is non-dischargeable and there is no off-set, so to speak, for the value of property returnable to the creditor even though it may be the same property so obtained. Moreover, it has been held that a bankruptcy court may not find certain portions of a debt to be non-dischargeable and certain portions discharged. *In re McCall*, 59 B.R. 3 (Bankr.W.D.La.1986). It is noteworthy that in *Birmingham Trust* the statutory language quoted by the Eleventh Circuit omitted the phrase "to the extent obtained by". Unfortunately, the guidance of legislative history is lacking as to this statutory riddle. The leading treatise on bankruptcy indicates that the *Birmingham Trust* decision is not in complete accord with the 1984 amendments to the Code and that the phrase "to the extent obtained by" is limiting language. 3 Collier on Bankruptcy, para. 523.08 (1986).

■ It may be conceded that the statutory language is ambiguous and, though seemingly simple, difficult to apply to the actual case. In a recent opinion by Bankruptcy Judge Ginsberg, *Matter of Suter*,

59 B.R. 944 (Bankr.N.D.Ill.1986), it was held that the effect of the emphasized language of the statute quoted above was to preclude finding punitive damages such as were awarded by the state court against the Debtor here to be non-dischargeable. It must be said that the punitive damages award of $50,000.00 against the Debtor cannot be considered to be within the language of Section 523(a)(2)(A). *In re Brown,* 66 B.R. 13, 16 (Bankr.D.Utah 1986). The same reasoning applies to the award of damages for emotional distress since this does not represent "money, property, or services, or ... credit ... obtained by ... actual fraud". Thus, an additional $5,000.00 must be eliminated from the nondischargeable debt determined today. *See In re Romero,* 535 F.2d 618 (10th Cir.1976). Likewise, the award of multiple damages under the Texas Deceptive Trade Practices Act cannot be included. Each of these components of the damages awarded under the state court judgment represents damages for something other than actual pecuniary loss suffered by the Plaintiffs.

■ After having given careful consideration to the import of the statutory language, this court is of the view that the phrase "to the extent obtained by" requires that an actual pecuniary loss to the creditor result from the fraudulent conduct of the debtor that gave rise to the debt. This excludes from the nondischargeable debt under Section 523(a)(2)(A) those portions of the judgment debt that are in the nature of a penalty having no relation to the actual pecuniary loss resulting from the debtor's fraud.

In certain instances the same reasoning would apply to an award of attorney's fees. Many bankruptcy courts have declined to find attorney's fees awarded in judgments to be non-dischargeable. *See e.g., In re Beard,* 5 B.C.D. 680 (Bankr.M.D.Tenn. 1979), and cases cited therein. The rule is well settled that attorney's fees are nondischargeable only when they are awarded under contractual or statutory authority. *In re Martin,* 761 F.2d 1163, 1168 (6th Cir.1985); *In re Cheatham,* 44 B.R. 4 (Bankr.N.D.Ala.1984); *In re Maxwell,* 51 B.R. 244 (Bankr.S.D.Ind.1983). Additionally, the attorney's fee award must stem from the same basis as the non-dischargeable debt. *In re Maxwell, supra.*

Generally, Texas law does not permit attorney's fees to be awarded the Plaintiff as actual damages in a suit for fraud. *Hennigan v. Harris County,* 593 S.W.2d 380 (Tex.Civ.App.—Waco, 1979, writ ref'd n.r.e.). In the case at bar, however, we have potentially two independent grounds for the award of attorney's fees. The first is based on Texas decisions permitting an award of attorney's fees when punitive damages are also awarded. *Kilgore Federal Savings & Loan v. Donnelly,* 624 S.W.2d 933 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.). The second basis is provided by the Texas Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Comm.C. sec. 17.41 *et. seq.* (Vernon Supp. 1986). The statute ("DTPA") provides: "Each consumer who prevails ... shall be awarded court costs and reasonable and necessary attorney's fees." *Id.* Section 17.-50(d).

■ It is the opinion of the court that the attorney's fee award cannot be held non-dischargeable under 11 U.S.C. sec. 523(a)(2)(A), based on the fact that the judgment also awarded punitive damages. However, for the reasons that follow, they are held to be non-dischargeable based on the statutory authority of Tex.Bus. & Comm.C. sec. 17.50(d) (Vernon Supp.1986). Each prerequisite to the attorney's fee award provided by the DTPA is plainly set out in the state court judgment. The judgment recites the multiple damages awarded under the statute, demonstrating that the issue was considered by the state court. Actual damages, also a prerequisite, were awarded for what this court has determined was the "actual fraud" of the debtor. *Leyendecker & Associates v. Wechter,* 683 S.W.2d 369, 374 (Tex.1984). Such fraud is actionable under the DTPA. *Barnhouse Motors, Inc. v. Godfrey,* 577 S.W.2d 378, 382 (Tex.Civ.App.—El Paso 1979, no writ). Thus, Texas law provides

consumer creditors such as the Plaintiffs herein with a right to attorney's fees as a part of a debt adjudged to have been created by fraud. As a matter of law, this is the statutory authority for the bankruptcy court to include the award of attorney's fees in the non-dischargeable debt.

We are left with $24,782.50 in actual damages, $5,727.00 interest, and $25,162.00 attorney's fees; totalling $55,671.50. The language of 11 U.S.C. sec. 523(a)(2)(A) is controlling and, absent a further ground for decision (such as may follow from a full evidentiary proceeding), this court may not declare any more of the claimed debt to be non-dischargeable. This court finds, based on the summary judgment evidence before it, that the non-dischargeable debt owed by the Debtor, and obtained by actual fraud, is $55,671.50. In addition to this amount, the Plaintiffs are entitled to interest at the rate of 10% as stated in the judgment, on the non-dischargeable debt, from the date of the state court judgment, as afforded them under Tex.Rev.Civ.Stat. art. 5069–1.05 (Vernon Supp.1986); *In re Romero, supra.*

## CONCLUSION

There can be no doubt that the debt declared non-dischargeable herein was obtained by fraud. The Plaintiffs have demonstrated to this court clearly and convincingly that they were defrauded by the Debtor and that their loss attributable thereto was at least the amount declared non-dischargeable. Summary judgment is granted the Plaintiffs as to their Section 523(a)(2)(A) claim and denied as to their Section 523(a)(6) claim. Counsel for Plaintiffs is directed to prepare an appropriate order.